# United States Court of Appeals
## For the First Circuit

No. 22-1535

MARCO DANILO SANTOS GARCIA,

Petitioner,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lynch, and Thompson,
Circuit Judges.

Daniel T. Welch, with whom Kevin P. MacMurray, Kristian R. Meyer, and MacMurray & Associates LLC were on brief, for petitioner.

Joseph A. O'Connell, Attorney, Department of Justice, Office of Immigration Litigation, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, and Cindy S. Ferrier, Assistant Director, were on brief, for respondent.

April 28, 2023

**LYNCH**, **Circuit Judge**.  Marco Danilo Santos Garcia ("Santos") seeks review of the Board of Immigration Appeals ("BIA") decision of June 21, 2022, affirming the immigration judge's ("IJ") denial of his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A).  The BIA held that there was no error in the IJ's holdings that: (1) Santos did not meet his burden to show past persecution because the threats Santos faced in Guatemala "were not so menacing as to cause significant actual suffering or harm," (2) Santos "did not establish that the mistreatment he endured ha[d] the requisite nexus to a statutorily protected ground," and (3) Santos "did not show a well-founded fear of future persecution on account of a statutorily protected ground."  Because substantial evidence supports the BIA's determination and the BIA committed no errors of law in that ruling, we deny Santos's petition for review. For the first time on appeal, Santos also purports to raise an argument based on a particular social group not made to the BIA, and we dismiss that unexhausted claim for lack of jurisdiction.

**I.**

Santos, a Guatemalan citizen, crossed the border from Mexico into the United States on or about April 26, 2016.  On July 14, 2016, the Department of Homeland Security vacated its previous

Expedited Removal Order[1] and issued Santos a Notice to Appear in removal proceedings, charging him with being subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i). Santos conceded that he was subject to removal and admitted the factual allegations in the Notice to Appear. On March 7, 2017, Santos filed applications for asylum, withholding of removal, and protection under the Convention Against Torture.

## II.

We describe in general terms Santos's testimony to the IJ at the June 12, 2019, merits hearing concerning his application for relief and the arguments in his pre-hearing brief.

Santos testified that he "fled from [Guatemala] because [his] life was in danger [due to] people threatening [him] -- people [who] gave [him] death threats." Santos claimed that when he was 23 years old in his hometown of 800 people, members of the Renewed Democratic Liberty ("Lider") Party threatened him on three occasions in March and April 2016. He alleged these threats were due to his support of the FCN political party during the 2015

---

[1] On May 1, 2016, the Department of Homeland Security issued Santos an Expedited Removal Order pursuant to 8 U.S.C. § 1225(b)(1). On July 5, 2016, Santos completed a credible-fear interview with an Asylum Officer, in which he stated that Renewed Democratic Liberty ("Lider") Party supporters in Guatemala had threatened him and demanded money. The Asylum Officer concluded that Santos had a credible fear of persecution or torture in Guatemala and referred his case to Immigration Court.

presidential election.[2]  His support amounted to distribution of FCN pamphlets from his food truck, attending FCN meetings, informing members of the community about FCN campaign ideas, and general undefined support.  The FCN candidate won the 2015 presidential election.  And in February 2016, Guatemala's Supreme Electoral Court cancelled the Lider Party for campaign law violations.

In his pre-hearing brief, Santos asserted that, after the dissolution of the Lider Party, around March 19, 2016, an undefined number of Lider Party members, some armed, arrived at his house and demanded 40,000 quetzales (approximately 5,047 USD).  Santos stated that "[t]hese men blamed [him], as a supporter of the FCN, for the state of their party and defeat of their electoral candidate."  They threatened to kill Santos in 20 days if he did not pay.  He did not pay that day.

Santos asserted that around March 31, 2016, one Lider Party supporter dragged him to an alley where other Lider supporters were.  They held him at gunpoint; asked again for that sum of money; and when he did not have it, kicked his legs and stomach, and left him.  Santos testified that his injuries from this incident "w[ere]n't anything serious" and were not visible, and that he "did not" go to the hospital after the attack.  Santos

_____

[2]    FCN stands for "Frente de Convergencia Nacional," which translates to "National Convergence Front."

then went to the police. He testified that the police officer refused to take his report because he "didn't have any proof or evidence, and then [the police officer] asked [him] too if he was conscious of what [he] was doing, that [he] was making allegations against the . . . L[ider] Party." In Santos's earlier declaration, however, he did not suggest that the police refused to take his report because it was against the Lider Party; he stated only that "because [he] had zero evidence [he] could not file a report" and noted that the town mayor at the time was a Lider Party member.

Santos testified to a third encounter around April 8, 2016, when three Lider Party supporters approached Santos in a public marketplace. He claimed one drew a weapon and threatened to kill him if he ever contacted the police again or if he failed to comply with their money demand. Santos returned to his home. When asked by the government's attorney why he did not go to another area of Guatemala, he replied, "I don't have anybody else in Guatemala." He testified that he was not seriously injured in the incidents in March-April 2016; that he never had to seek medical attention; and that Lider Party supporters targeted him because "they had lost a lot of money because their political party lost" so "they wanted to recover this lost money." Further, when the government attorney asked Santos whether "anyone told [him]

that the people [who] threatened [him were] currently looking for [him] in Guatemala," Santos responded, "No."[3]

The IJ concluded at the hearing that, though Santos was credible, he did

> not me[e]t the very high burden needed for asylum. He . . . never had to seek medical treatment. There was a revenge aspect in this as well, and money. I'm not sure he met the nexus even assuming persecution and the party has been dissolved so I find any fear of future persecution is not on account of political opinion. So I will have to deny the application today under the law.

The IJ issued a written decision denying relief from removal on July 23, 2019. In support of denial of relief, the IJ held that the harm Santos suffered at the hands of Lider Party members in March-April 2016 did "not rise to the level of past persecution" and that their threats "were not 'so menacing as to cause significant actual suffering or harm.'" (Quoting Vilela v. Holder, 620 F.3d 25, 29 (1st Cir. 2010)). Santos "was able to walk away from each encounter unharmed" and "did not require medical treatment."

The IJ also found that "the evidence [did] not establish that [Santos] was targeted on account of his political opinion"; "rather[,] he was targeted in an attempt to extort money." The IJ

---

[3] Santos also conceded that he was arrested for driving under the influence of alcohol in August 2018, that there was an open container in the vehicle when he was stopped by police, and that he could not recall how much alcohol he had consumed.

emphasized that the Lider Party had been dissolved by March 2016, that Santos's FCN Party was in power during the relevant period, and that "retribution over personal matters is not a basis for asylum under" the INA.

Third, the IJ found that Santos "failed to establish that his life or freedom would be threatened in the future in Guatemala on account of a protected ground" because the Lider Party had since been dissolved, Santos's FCN Party won the 2015 election, and Santos only assumed without proof that people were looking for him in Guatemala.[4]

In his BIA appeal, Santos maintained that the IJ erred in denying his asylum claim because "he faced past persecution as he was threatened by armed men on three separate occasions, and on one occasion he was also physically assaulted"; "he suffered persecution on account of his political opinion and membership in the FCN political party"; and "he established that he has a well-founded fear of future persecution as the men that attacked him

_____

[4] The IJ also concluded that the record did not support the conclusion that "it [was] more likely than not that [Santos] would be singled out and tortured by, or with the acquiescence of, the government of Guatemala, either by their active participation in torture, or by their willful blindness to the acts of private individuals." On appeal, the BIA concluded that Santos waived his Convention Against Torture ("CAT") argument because he did not meaningfully challenge the IJ's determination that he was not eligible for CAT protection. Santos does not develop any challenge to the IJ's or BIA's CAT determinations in his brief, so that claim has been waived. See Sanchez-Vasquez v. Garland, 994 F.3d 40, 45 (1st Cir. 2021).

- 7 -

continue to reside in Guatemala and the FCN political party has now been accused of corrupt practices."

The BIA issued a decision on June 21, 2022, affirming the IJ's findings that Santos "did not meet his burden of proof for asylum or withholding of removal." The BIA agreed with the IJ that (1) "these extortion attempts, though reprehensible, do not constitute persecution" because Santos "walked away from each encounter unharmed and never required medical treatment"; (2) Santos "did not establish that the mistreatment he endured ha[d] the requisite nexus to a statutorily protected ground" because the IJ "did not clearly err in finding that the armed individuals' motivation was extorting [Santos] for monetary gain, and not because of his political opinion"; and (3) Santos "did not show a well-founded fear of future persecution on account of a statutorily protected ground" because Santos "did not establish a continuing threat" given that the Lider Party had been dissolved, Santos's party had won the 2015 election, and Santos was "unaware of anyone continuing to look for him in Guatemala."

### III.

### A.

We start with Santos's unexhausted claim and dismiss that claim for lack of jurisdiction. On appeal, Santos argues that he faced "past persecution on account of his membership as an Indigenous Guatemalan male of Mam descent." Santos did advert to

- 8 -

his indigenous status in his pre-hearing brief before the IJ, and he claimed that he "risk[s] harm and discrimination on account of [his] indigenous ethnicity" in his affidavit dated May 6, 2019, in support of his application for asylum and withholding of removal. But Santos offered no testimony on his indigenous identity before the IJ. The IJ, accordingly, made no findings on it. Further, Santos failed to raise the issue with the BIA. Thus, Santos has failed to exhaust his administrative remedies, and this court is "statutorily precluded from reviewing his claim in this regard." 8 U.S.C. § 1252(d)(1); see also Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992) ("Because he could have, but did not, raise this issue below, petitioner failed to exhaust his administrative remedies and thus waived his right to be heard on the claim of persecution on account of membership in a particular social group."); Fabian-Soriano v. Barr, 925 F.3d 552, 557-58 (1st Cir. 2019) (rejecting petitioner's argument that the IJ committed legal error because petitioner had not first exhausted administrative remedies).

## B.

As to Santos's preserved challenge to the BIA decision, we review de novo legal and constitutional issues, "but with some deference to the agency's reasonable interpretation of statutes and regulations that fall within its sphere of authority." Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). We review "the BIA's

factual findings for substantial evidence." Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022). The substantial evidence standard "requires us to accept the agency's factual findings . . . unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion." Id. (omission in original) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)). We reverse only if "the evidence points unerringly in the opposite direction." Ruiz-Escobar v. Sessions, 881 F.3d 252, 259 (1st Cir. 2018) (internal quotation marks omitted) (quoting Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007)). "That the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion." Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).

Here we deny Santos's petition because the BIA found on substantial evidence that Santos had not proven that he suffered past persecution due to his political opinion or that he would suffer future persecution.

Santos argues that the BIA erred in its finding as to past persecution. He argues that "he experienced past persecution in the form of extortion, credible death threats, and physical assault" due to his membership in the FCN Party. The record does not compel the conclusion that the IJ and BIA were wrong. Persecution goes beyond "unpleasantness, harassment, and even

basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).

It is true that Santos testified that he was threatened with death three times during the course of the attempted extortion. "[C]redible verbal death threats" can amount to persecution if they are "so menacing as to cause significant actual suffering or harm." Lobo v. Holder, 684 F.3d 11, 18 (1st Cir. 2012) (quoting Vilela, 620 F.3d at 29); see also Sok v. Mukasey, 526 F.3d 48, 54 (1st Cir. 2008). The IJ did find Santos credible as to receiving death threats. But there is no finding that those threats were "credible" threats of death as opposed to threats intended to frighten him into paying, especially given the lack of severity of the one assault. Further, Santos has never provided specific details about the "immediate impact, if any, that these threats had on him" beyond his decision to come to the United States. Rodriguez v. Lynch, 654 F. App'x 498, 500 (1st Cir. 2016).

Further, this court has affirmed the BIA's finding of no past persecution on facts more egregious than these. In Chen v. Lynch, 814 F.3d 40 (1st Cir. 2016), this court upheld the BIA's determination of no past persecution even though the petitioner "was beaten and subsequently taken to the police station where he was placed in custody, interrogated, further assaulted, and threatened with forced sterilization." See id. at 42-43. The petitioner's injuries in Chen, as here, "did not exceed bruising

- 11 -

and did not require hospitalization," and though the latter factor is not dispositive, it "bears on the 'nature and extent' of [the] injuries and is certainly 'relevant to the ultimate determination'" of past persecution. Id. at 46 (quoting Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013)).

Santos argues that the IJ and the BIA "failed to consider a mixed motive analysis regarding the motivation of [Santos]'s persecutors" to target him due to his "membership in the FCN political party." Not so. The IJ stated that Santos must establish that the protected ground is "at least one central reason" for the persecution. Substantial evidence easily supports the determination that Santos did not show that his political affiliation was "one central reason" for the harm he experienced. 8 U.S.C. § 1158(b)(1)(B)(i). Santos joined the FCN Party in 2015. At most he "helped organize events for political speakers, distribute[d] pamphlets at his food stand, and helped organize fundraising events by participating in soccer tournaments." Santos's party was in fact victorious. As the IJ found, what was involved was an attempt, not motivated by his FCN affiliation, to extort money from Santos and was nothing more than garden variety extortion.

Santos's final argument is (1) that he was entitled to a presumption of future persecution and (2) that he established "an independent well-founded fear of future persecution" based on

his FCN membership and country conditions in Guatemala. Because Santos has not established that he suffered past persecution based on his political opinion, he is not entitled to the presumption of future persecution. See Chen, 814 F.3d at 45. Nor does the record show any well-founded fear of future persecution. Santos testified that no one has told him that the people who threatened him are currently looking for him in Guatemala. The Lider Party is no longer active and has not been since 2016, and the FCN Party won the 2015 presidential election. Santos has provided no support for his contention that he might be harmed because the FCN Party has been accused of corruption. Substantial evidence supports the agency's finding regarding the police's lack of investigation, and Santos merely surmises that the police's inaction was motivated by fear of or collaboration with the Lider Party.

Santos's petition for review is **dismissed** in part and **denied** in part.