# United States Court of Appeals
## For the First Circuit

No. 23-1701

SARA ESTEBAN-GARCIA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

Kristian Robson Meyer, with whom Kevin P. MacMurray and MacMurray & Associates were on brief, for petitioner.
Nancy Pham, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Corey L. Farrell, Senior Litigation Counsel, Office of Immigration Litigation, and Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, were on brief, for respondent.

February 29, 2024

**LYNCH**, <u>Circuit Judge</u>.  Sara Esteban-Garcia petitions for review of a decision of the Board of Immigration Appeals dated July 24, 2023, which adopted and affirmed an immigration judge's order denying her application for asylum and claim for withholding of removal under sections 208 and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3)(A).  The IJ determined that Esteban-Garcia had not met her burden to show that she had suffered from past persecution for a number of reasons, including that she had failed to establish a nexus between the harm that she testified that she had suffered and a statutorily protected ground.  As to future persecution, the IJ also found she had failed to meet her burden to establish a well-founded fear of future persecution on account of a protected ground.

Because there was no error of law in the determination that Esteban-Garcia had failed to meet her burden to show a nexus to a protected ground and the record does not compel a contrary conclusion, we deny the petition for review.

**I.**

**A.**

Esteban-Garcia is a twenty-nine-year-old native and citizen of Guatemala.  She is an indigenous woman of Mam descent who grew up in a small village of indigenous people called Tuichán in Guatemala.  She entered the United States without inspection on or about June 1, 2014, at or near Hidalgo, Texas, and was detained

shortly thereafter.  On June 19, 2014, an asylum officer conducted a credible-fear interview of Esteban-Garcia and determined she had established a credible fear of persecution.

On July 3, 2014, the Department of Homeland Security initiated removal proceedings against Esteban-Garcia, filing a Notice to Appear in immigration court charging her with removability pursuant to section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen not in possession of a valid entry document at the time of her application for admission.  On July 21, 2014, Esteban-Garcia, proceeding pro se, admitted the factual allegations contained in the Notice to Appear and indicated her intent to file an application for asylum.  She later filed a written pleading through counsel admitting the factual allegations and conceding the charge of removability.  She filed an application for asylum on August 1, 2014.  On December 10, 2018, represented by counsel, she testified at a hearing before the IJ and submitted written declarations from herself, her brother, and two cousins in support of her asylum application.

In her credible-fear interview, declaration, and testimony before the IJ, Esteban-Garcia stated that she had left Guatemala and feared returning there because a man named Tito[1],

---

[1]    At her credible-fear interview on June 19, 2014, Esteban-Garcia said that her alleged persecutor was named Tito Vasquez.  Later, in her declaration in support of her applications on November 14, 2018, she wrote his name was Tito Sanchez.  Due to

- 3 -

with whom she had been romantically involved, told her that he wanted her to become a prostitute or sell drugs to earn money for him and his friends. She met and began dating Tito, who is also indigenous, in April 2014, when she was nineteen years old. Approximately one month later, Tito asked her to meet him in a park in San Marcos -- a town that Esteban-Garcia frequented to see Tito and shop at the local market -- so he could introduce her to his friends. When she arrived, he was with several other men and stated that he wanted her to prostitute herself or sell drugs. He told her that he would become romantically involved with women and then "put[] them in contact with these men" and that "this is how we manipulate so that young girls will fall." The men stated that "get[ting] women to do this" was "their business and job." The men said that they wanted her to do this because "they wanted to make money off of women who were able to sell their bodies." She testified that she believed the reason Tito wanted to force her to become a prostitute or drug seller was so that he could "have a better life" from the money she would earn.

When Esteban-Garcia refused, Tito stated, "I have two other male friends [here] and you cannot escape now." The men threatened to kill her if she did not comply and insulted her with "a mountain of bad names," including "you're going to be a slut."

this ambiguity in the record, we refer to Tito only by his first name.

- 4 -

Tito also grabbed her arm hard enough to leave bruises, pulled her hair, groped her breast, and "touch[ed] [her] body all over." She stated she was "terrified" and that she was "not physically" harmed during this incident. After she told Tito she would report him to the police, he threatened to kill her and her family. She then told him she would do what he asked, at which point he let her go and she returned home. She stated at her credible-fear interview that this was the only instance in which she was threatened to be forced into prostitution.

Immediately after this encounter, Esteban-Garcia began preparing to flee Guatemala. Although she had blocked his phone number after the incident, Tito called her the next day from an unknown number to ask if she was ready to begin working for him and that he was "going to come and get [her]." After this call, she destroyed her phone and contacted her brother, who lives in the United States. Her brother told her he could help her leave Guatemala and, soon after, sent her money and arranged her travel to the United States. She left Guatemala within days of this incident. Esteban-Garcia testified that her cousin informed her that men in Guatemala then continued to ask about her; the latest such inquiry occurred one month before her December 2018 immigration hearing. Her cousin's declaration stated that "they have been asking for [Esteban-Garcia] in the streets [and] markets."

Upon questioning at her immigration hearing, Esteban-Garcia testified that she did not report this incident to the police because she was afraid of Tito's threats and because she "d[id]n't know" if the police would help her because "they don't do justice." She stated in her credible-fear interview that "the [police] will kill people" and in her declaration that she "cannot count on the military or the police in [her] country." She stated in her declaration that there is no police station in her village and that Tito told her "if the police arrest him, he has connections on the outside that can harm [her]."

Esteban-Garcia testified that she fears that if she returned to Guatemala, Tito "would look for [her]" and possibly "grab [her] by force or maybe he would torture [her]." She stated in her credible-fear interview that she fears they will force her to become a prostitute and that "if I don't want to prostitute myself, they will kill me." She does not know of any other girls or women who were forced to become prostitutes, but she has heard rumors that people "have started to manipulate girls into doing this" and stated, "I think they have grabbed more around."

Before the IJ, Esteban-Garcia submitted evidence that she was diagnosed with, and has received treatment for, major depressive disorder and post-traumatic stress disorder ("PTSD") while in the United States since at least February 2017, several

years after the incident with Tito.[2]  In support of her asylum application, she submitted a letter from her therapist regarding her mental health diagnoses and general evidence concerning PTSD. She also submitted general country conditions evidence regarding indigenous persons, sex trafficking, and violence against women in Guatemala.

**B.**

In a written decision on December 11, 2018, the IJ denied Esteban-Garcia's application for asylum and claims for withholding of removal and protection under the Convention Against Torture ("CAT") and ordered that she be removed from the United States to Guatemala.  The IJ found that Esteban-Garcia was a credible witness and that she had timely filed her asylum application.  The IJ also found that Esteban-Garcia had failed to meet her burden to show "past persecution or a well-founded fear of future persecution on account of a protected ground" because (1) Esteban-Garcia's experience in Guatemala did not rise to the level of persecution; (2) she had not established that the harm she experienced was "on account of a protected ground"; (3) she had not established that the harm "was the direct result of government action,

---

[2]    In a letter dated November 7, 2018, Yolanda Rosa, a Licensed Mental Health Clinician ("LMHC") at Lynn Community Health Center, averred that she had been treating Esteban-Garcia for her mental health issues since February 15, 2017, and that Esteban-Garcia had previously been seen by another LMHC, Guillermina Montano, at the health center.

- 7 -

government-supported action, or the government's unwillingness or inability to control private conduct"; and (4) she had "failed to establish that her life or freedom would be threatened in the future in Guatemala on account of a protected ground." Because Esteban-Garcia failed to meet her burden of proof for asylum, the IJ determined that she had also failed to demonstrate eligibility for withholding of removal and CAT protection.

On January 10, 2019, Esteban-Garcia timely appealed the IJ's decision to the BIA. On July 24, 2023, the BIA adopted the IJ's findings of fact and affirmed its legal conclusions, dismissing Esteban-Garcia's appeal. The BIA noted that she had waived her challenge to the denial of CAT protection because she had "not meaningfully challenge[d] [the IJ's CAT] determination on appeal."[3] The BIA also addressed additional issues that Esteban-Garcia had raised on appeal, holding that the IJ did not err by not addressing the cognizable nature of Esteban-Garcia's proposed particular social groups because her claim failed on other grounds and affirming the IJ's determination that Esteban-Garcia "did not submit sufficient evidence to establish that her harm rises to the level of past persecution," after considering evidence that she suffered from PTSD as of February 2017.

---

[3] Since Esteban-Garcia also has not meaningfully raised this issue on appeal before this court, her request for CAT protection is waived for both reasons.

Where, as here, the BIA adopted the IJ's findings, "we review both the IJ's and the BIA's decisions as a unit." Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013) (quoting Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)). We evaluate "the IJ's decision to the extent of the adoption, and the BIA's decision as to [any] additional ground." López-Pérez v. Garland, 26 F.4th 104, 110 (1st Cir. 2022) (alteration in original) (quoting Sunoto v. Gonzales, 504 F.3d 56, 59–60 (1st Cir. 2007)).

"Whether an applicant has met his or her burden for proving eligibility is a question of fact." Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018). We review the agency's factual findings using the "substantial evidence standard," a deferential standard that "requires us to accept" those findings "unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion." Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022) (quoting Mazariegos-Paiz, 734 F.3d at 64); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) ("The BIA's determination that [the petitioner] was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." (internal quotations omitted)). We review the BIA's conclusions of law de novo but provide "some deference to the agency's expertise in interpreting both the statutes that govern its operations and its

own implementing regulations." Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015).

## III.

To qualify for asylum in the United States, Esteban-Garcia must demonstrate that she meets the definition of a "refugee," meaning that she is "unable or unwilling to return to" Guatemala because of "persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1158(a)(42)(A); see also 8 C.F.R. § 1208.13(a)-(b); INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987); Ye v. Lynch, 845 F.3d 38, 43 (1st Cir. 2017). "Establishing persecution requires proof of three discrete elements: a threshold level of past or anticipated serious harm, a nexus between that harm and government action or inaction, and a causal connection to one of the five statutorily protected grounds." Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021).

An applicant who has demonstrated that she has suffered from past persecution on account of a statutorily protected ground is "presumed to have a well-founded fear of [future] persecution" on account of that same protected ground. 8 C.F.R. § 1208.13(b)(1). If such demonstration has not been made, the applicant must independently demonstrate a well-founded fear of

future persecution that is "both subjectively genuine and objectively reasonable." Sunarto Ang v. Holder, 723 F.3d 6, 10-11 (1st Cir. 2013).

We need address only one of the grounds on which Esteban-Garcia was denied relief. For both past and future persecution claims, "[a]n inability to establish any one of the three elements of persecution will result in a denial of [the] asylum application." Aguilar-De Guillen v. Sessions, 902 F.3d 28, 33 (1st Cir. 2018) (alterations in original) (quoting Carvalho-Frois v. Holder, 667 F.3d 69, 73 (1st Cir. 2012)). Thus, "[i]f the agency's findings on any one of [its] determinations [on these elements] are supportable, the petitioner cannot prevail." Carvalho-Frois, 667 F.3d at 73.

The IJ and the BIA determined that, independently of whether Esteban-Garcia had shown that the harm she experienced constituted persecution, she failed to demonstrate a nexus, even under a mixed-motive analysis, between such harm and a protected ground. The evidence in the record does not compel a contrary conclusion. "To meet th[e] 'nexus' requirement," the petitioner must have provided "sufficient evidence of an actual connection between the harm [s]he suffered and h[er] protected trait." Ivanov v. Holder, 736 F.3d 5, 12 (1st Cir. 2013). The petitioner need not "establish[] the exact motivation of [her] 'persecutor,'" but she "does bear the burden of establishing facts on which a

- 11 -

reasonable person would fear that the danger arises on account of" a protected ground. Matter of Fuentes, 19 I & N Dec. 658, 662 (BIA 1988); see also Elias-Zacarias, 502 U.S. at 483. Where the evidence shows there are multiple motives for persecution, the petitioner must provide some evidence to establish that a protected ground was "at least one central reason." INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); see also Aldana-Ramos v. Holder, 757 F.3d 9, 18 (1st Cir. 2014), as amended (Aug. 8, 2014); Aguilar-De Guillen, 902 F.3d at 34.

Here, the IJ and BIA concluded that Esteban-Garcia had failed to show persecution on account of a protected ground largely based on her own statements. She consistently stated that Tito (and the other men) had wanted her to become a prostitute and drug seller "so that [they] could enjoy the money." This motivation does not implicate a protected ground, as the IJ correctly found. Esteban-Garcia's brief to us acknowledges that "[c]learly, her persecutors were motivated to make money" but contends that, notwithstanding that conclusion, "the [BIA] and the [IJ] failed to properly engage in a mixed motive analysis," citing Aldana-Ramos, 757 F.3d at 18. In that regard, she argues the IJ and BIA "fail[ed] to consider other motivations for why [Tito] chose to target her . . . particularly [that Esteban-Garcia's] membership" in her proposed particular social group of "[i]ndigenous, Guatemalan women who are single and living in rural, indigenous communities"

- 12 -

was "at least one central reason that motivated her mistreatment."[4] This is so, she contends, because the agency "failed to consider testimonial and documentary evidence that [her] status as a vulnerable indigenous Guatemalan woman was not a subordinate motivation, but rather a direct reason that these men targeted her, due to her vulnerability within Guatemalan society." She also argues that "[i]n failing to weigh this membership against other motivations, the [IJ] further engaged in legal error." The record does not support these arguments, and Aldana-Ramos provides her no support.

In Aldana-Ramos, this court vacated the BIA's decision as to the petitioner's asylum claim due to legal error "because it did not allow for the possibility of mixed motives" and because it "was not supported by substantial evidence because it neglected the evidence in support of petitioners' claim." 757 F.3d at 19.[5]

---

[4] We need not reach Esteban-Garcia's other argument that the BIA and IJ erred insofar as neither considered whether her "proposed particular social group of 'Indigenous, Guatemalan women who are single and living in rural, indigenous communities' was legally cognizable." As the BIA held, it was unnecessary to reach this issue because she did not establish that she had suffered past persecution and thus "did not otherwise establish her eligibility for relief." See INS v. Bagamasbad, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

[5] The BIA in Aldana-Ramos concluded that, since the petitioners' father had been targeted by a gang "because they believed he was a wealthy person," the gang was "motivated by criminal intent to misappropriate money from the respondents'

Neither is true of the decisions here. In this case, the IJ, whose decision the BIA adopted, explicitly recognized that an asylum applicant like Esteban-Garcia could bring a mixed-motive claim: "[w]hile [an] alien need not prove that the alleged persecutors targeted her solely because of a protected characteristic, the alien must provide some evidence, direct or circumstantial, establishing that the protected ground was 'at least one central reason' for the persecution."

The IJ acknowledged Esteban-Garcia's status as an indigenous Guatemalan woman by stating that "[t]he [r]espondent is indigenous. She is Mam," that "[s]he lived with her parents in Tuich[á]n . . . an indigenous village," and that she testified that "[she] was discriminated against in Guatemala because she is an indigenous woman. She was insulted on the street, called 'Indian,' and mocked." The IJ then determined, based on Esteban-Garcia's testimony, that Tito and his associates wanted her to become a prostitute or drug seller for financial gain, which is not a protected ground. The IJ's rulings are supported by and consistent with our case law. See Villalta-Martinez, 882 F.3d at 24 (rejecting a petitioner's claim of error where "[t]he IJ and

father and not on account of a protected characteristic of respondents' father or of their family." Id. at 18. This determination was erroneous because there was "no legal authority supporting the proposition that, if wealth is one reason for the alleged persecution of a family member, a protected ground -- such as family membership -- cannot be as well." Id.

- 14 -

thus the BIA explicitly acknowledged the possibility of a mixed-motive case, but, based on the evidence presented, made a fact-specific determination that [the petitioner] had not shown that the persecution was motivated by" her membership in a particular social group); Barnica-Lopez v. Garland, 59 F.4th 520, 529-30 (1st Cir. 2023) (holding the same); see also Lopez-Lopez v. Sessions, 885 F.3d 49, 51-52 (1st Cir. 2018) (upholding the agency's finding that the petitioner had failed to establish a nexus between the harm he had suffered and a statutorily protected ground where his alleged persecutors were "centrally motivated by a desire [for] profit"); Arevalo-Giron v. Holder, 667 F.3d 79, 83 (1st Cir. 2012) (rejecting an argument that the petitioner was targeted on account of a particular social group where "greed -- not social group membership -- [wa]s the apparent trigger for the [alleged persecutors'] interest").

The record clearly demonstrates that the BIA and IJ did not "neglect[] the evidence in support of [Esteban-Garcia's] claim." Aldana-Ramos, 757 F.3d at 19. Substantial evidence supports the agency's conclusion that her membership in a protected group was not a central reason for the harm she experienced. She repeatedly stated that the reason why Tito and his associates wanted her to become a prostitute and drug seller was so that they could benefit financially. When asked by an asylum officer at her credible-fear interview if the men had explained to her why they

wanted her specifically to enter into prostitution, rather than someone else, she stated that "all they said is that they wanted the money for women to be able to sell their bodies and make money that way." At the same interview, she stated, "I understood that all they wanted to do was make easy money" and "they like to make money that way and take women in[to] prostitution," even when asked, "[o]ther than the money, why did these men think they could prostitute women?" She also stated that the men had said "you have a good age to start prostitution, you are young." In her declaration in support of her asylum application, she wrote that "they wanted to make money off of women who were able to sell their bodies" and that "get[ting] women to do this" was "their business and job." In her testimony, she stated that Tito wanted her to engage in prostitution or drug selling so that she would give him the money she earned, and he could "have a better life." Her cousin confirmed this in her declaration, writing that Tito targeted Esteban-Garcia so that he "would have a lot of money."

Indeed, when specifically asked at her credible-fear interview if the men "sa[id] anything about [Esteban-Garcia] being a wom[a]n or being indigenous" while threatening her, she responded, "[n]o they didn't say anything, about that."[6] When

_____

[6] At oral argument, Esteban-Garcia's counsel mistakenly argued that at her credible-fear interview, in response to the question, "what do you fear as an indigenous woman?" Esteban-Garcia stated, "if I'm indigenous and they can make me a

- 16 -

asked at her immigration hearing how indigenous women are treated in Guatemala, Esteban-Garcia testified that they faced discrimination and harassment but not that they were targeted to be forced into prostitution or drug selling. She also testified that she did not know of any girls from her indigenous village who were forced to become prostitutes, although she had heard rumors of this occurring.

Other evidence to which Esteban-Garcia cites does not compel the conclusion that she was harmed on account of her status as an indigenous Guatemalan woman, her proposed particular social group.[7] The country conditions evidence focuses primarily on how sex traffickers target women in general, young people, or otherwise "vulnerable persons," but not specifically indigenous Guatemalan women. Some of the country conditions evidence does state, for

prostitute." In fact, the record shows that, in response to the question, "[w]ould you have any problems in your country because you are indigenous?" she stated, "If I'm indigenous and they can make me a prostitute then yes." (Emphasis added). She then stated, if these conditions were met, that "[t]hey would not respect me, they would take me to jail, they would hurt me." Esteban-Garcia did not state that she would be forced to become a prostitute in Guatemala because she is indigenous.

[7] Although Esteban-Garcia did argue to the agency that she was harmed on account of her gender, rather than on account of her gender and her status as an indigenous person, based on her membership in the proposed particular social group of "Guatemalan women," this argument is waived on her petition for review because she failed to develop it before this court. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 17 -

example, that "criminal structures exploit indigenous women, trafficking them from rural areas to the capital." Yet, when viewed as a whole, the evidence does not "point[] unerringly in the opposite direction," see López-Pérez, 26 F.4th at 111, from the agency's conclusion that Esteban-Garcia's membership in the particular social group of "[i]ndigenous, Guatemalan women who are single and living in rural, indigenous communities" was not a central reason why Tito harmed Esteban-Garcia.

Because she failed to meet her burden to show past persecution on account of a protected ground, Esteban-Garcia enjoys no presumption of future persecution. Fear of future persecution, like past persecution, must be on account of a protected ground. Carvalho-Frois, 667 F.3d at 74 (citing 8 U.S.C. § 1101(a)(42)(A)). The IJ and the BIA separately concluded that Esteban-Garcia had failed to demonstrate a well-founded fear of future persecution because she had "not met her burden of establishing that any fear of future harm is on account of a protected ground for the reason state[d] above." (Emphasis added). We find the record does not compel a contrary conclusion.

Esteban-Garcia argues that she has established a well-founded fear of future persecution that is "both subjectively genuine and objectively reasonable," see Sunarto Ang, 723 F.3d at 10-11, and, repeating the arguments we have just rejected, that she has met the nexus requirement. Because she has failed to

demonstrate the necessary nexus between her fear and her membership in a protected group, her argument that her fear is genuine misses the point.

Her claim for withholding of removal under 8 U.S.C. § 1231(b)(3) necessarily fails as well. "To petition successfully for withholding of removal, an alien must show that, if returned to [her] homeland, [she] would more likely than not be subjected to persecution on account of a statutorily protected ground." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009); see also 8 C.F.R. § 1208.16(a), (b)(1)-(2). "[A] noncitizen who cannot meet the lower asylum standard will necessarily fail to make out a counterpart claim under the higher standard for withholding of removal." López-Pérez, 26 F.4th at 111.

The petition for review is **denied.**