# United States Court of Appeals
## For the First Circuit

No. 25-1448

CLARIXA MALDONADO-RUIZ,

Petitioner,

v.

PAMELA J. BONDI,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Aframe, Lynch, and Dunlap,
Circuit Judges.

Kristian R. Meyer, Kevin P. MacMurray, and MacMurray & Associates on brief for petitioner.

Monica G. Antoun, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Brett A. Shumate, Assistant Attorney General, Civil Division, and Shelley R. Goad, Assistant Director, Office of Immigration Litigation, on brief for respondent.

March 10, 2026

**LYNCH**, **Circuit Judge**. Clarixa Oneyda Maldonado Ruiz, who is a native and citizen of Honduras and who entered the United States without inspection over a dozen years ago, petitions for review of a decision by the Board of Immigration Appeals ("BIA") dismissing her appeal from the Immigration Judge's ("IJ") denial of her applications for asylum and withholding of removal, based largely on her testimony that she is bisexual. See 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A). We deny the petition because she has shown neither past persecution nor a nexus to her claimed particular social groups ("PSGs"), and has not established that the Honduran government would be unwilling or unable to protect her from private actors. We have no need to reach the issue of whether her claimed PSGs are viable, and so we do not do so.

### I.

### A.

Maldonado-Ruiz entered the United States without inspection on or about March 12, 2012, at or near Hidalgo, Texas. On August 1, 2012, the Department of Homeland Security filed a Notice to Appear charging her with removability pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act. Maldonado-Ruiz, through counsel, conceded that she was removable and filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). On April 4, 2022, she testified at a merits hearing before the IJ and

also relied on her July 22, 2021, written declaration and certain documentary evidence previously submitted to the IJ.[1]

Maldonado-Ruiz was born in 1982 in Tela, Honduras.  When she was five years old, her family moved within Honduras to San Cristóbal.  She did not know her father until age seven.  During her childhood, he lived in the United States and periodically returned to Honduras and stayed at her family's home.  Then, he came to the home drunk, argued with her mother, and at times forced the family out of the house.  He once attempted to throw a television at her mother and, on another occasion, choked her sister.  When Maldonado-Ruiz was eight or nine years old, her father struck her back with the metal part of a belt, as punishment for jumping on a bed.[2]  No report was made to the police.

Around age nine, Maldonado-Ruiz witnessed a neighbor shoot and kill Maldonado-Ruiz's brother-in-law when the brother-in-law confronted the neighbor.  Maldonado-Ruiz stated that the

---

[1] Maldonado-Ruiz submitted country conditions materials to the IJ, including reports from the U.S. State Department, Human Rights Watch, Amnesty International, and other sources describing discrimination and violence against lesbian, gay, bisexual, transgender, and intersex ("LGBTI") persons in Honduras, including attacks by gangs, police, and members of the public, as well as killings of activists.  The materials also relate that Honduran law prohibits discrimination based on sexual orientation and gender identity and includes enhanced penalties for crimes committed on those grounds, though prosecutions appear to be rare.

[2] Although Maldonado-Ruiz's written declaration places the belt-striking at a different age than her hearing testimony, the IJ's findings reflect the hearing testimony on this point.

neighbor had been stalking and harassing her family at their San Cristóbal home. The family filed a complaint with police. No arrest was made. The family returned to Tela after the shooting.

Maldonado-Ruiz testified that she identifies as bisexual and that bisexuality is common but not accepted in Honduras. At age twenty-two, she began a two-year romantic relationship with a woman named Nelly. Because they went out publicly as a couple, Maldonado-Ruiz believed that others in the community were aware of the relationship. Some people called her and Nelly "marimacha," which Maldonado-Ruiz understood to be a derogatory term for women who are attracted to women. Maldonado-Ruiz was not physically harmed or threatened by those who used that term.

In 2009, Maldonado-Ruiz discovered that her house had been broken into and valuables stolen. She reported the burglary to police, who prepared a written report reflecting her suspicion that a neighbor was the robber and did not investigate further or identify a suspect. Two years later, Maldonado-Ruiz witnessed two men fatally shoot a young man in the street. She did not know the victim or the perpetrators and does not assert that she reported the incident to police. She said she was hospitalized in Honduras for shock.

In 2011, a man whom Maldonado-Ruiz did not know or recognize began following her, but she recalled few details. On one occasion, while she was walking near her house, the man stood

in front of her at an unspecified distance, called her "trash," "ugly," and "bitch," moved as if to strike her but did not do so, and said, "bitch, I will kill you." The man did not mention her sexuality or Nelly. The encounter ended without physical harm to Maldonado-Ruiz. She believed the threat was related to her attraction to women. She did not report the incident to police because, in her view, Honduran authorities do not believe in justice. Maldonado-Ruiz saw the man once more on a later date; he stared at her but did not speak. In late 2011, she received threatening text messages from an unidentified sender, which she believed were from that man. She did not describe the content of the messages or explain the basis for her belief.

Maldonado-Ruiz left Honduras in 2012 and came to the United States. In 2014, she married a man, Edwin Escobar, who is also undocumented, and she remains married to him today. They have one child together.[3] She testified that she continues to identify as bisexual and respects her marriage, would continue to respect her marriage if returned to Honduras, and would not pursue a relationship with a woman unless the marriage were to end.[4] In

---

[3] Maldonado-Ruiz has another child, born in Honduras in 2006, from a prior relationship with a different man.

[4] Maldonado-Ruiz was arrested in 2019 after she allegedly struck her husband three times with a baseball bat. The charges were later dismissed.

the United States, she has received therapy and has been diagnosed with post-traumatic stress disorder ("PTSD").

## B.

On April 13, 2022, the IJ issued a written decision denying Maldonado-Ruiz's applications and ordering her removed to Honduras. The IJ generally found her testimony credible but insufficient to establish her claims. The IJ denied asylum because Maldonado-Ruiz had failed to establish (1) that the harm she described rose to the level of persecution, (2) that her membership in her proposed PSGs was "one central reason" for any harm she suffered or feared;[5] (3) that the Honduran government was unable or unwilling to protect her, or (4) that she had a well-founded fear of future persecution. The IJ emphasized that the principal incident consisted of a single unfulfilled threat from an unknown man who did not reference Maldonado-Ruiz's gender, sexual orientation, or relationship with Nelly, and that the threat was never reported to police. The IJ also observed that Maldonado-Ruiz had lived openly as a bisexual woman in Honduras for more than two years without suffering any physical harm on account of her sexual

---

[5] Maldonado-Ruiz's asylum application asserted that she belonged to the following PSGs: "Honduran Women," "Honduran Sexual Minority," and "Honduran Bi-sexual Women." On appeal, she develops her nexus arguments only as to harm allegedly tied to her sexual orientation. Any argument that she was persecuted on account of her gender, independent of her sexual orientation, is thus waived. See Dor v. Bondi, 161 F.4th 1, 10 n.12 (1st Cir. 2025).

orientation or gender. The IJ acknowledged the effect on Maldonado-Ruiz's mental state of witnessing violence against others. As to the country conditions materials describing discrimination against LGBTI persons and uneven enforcement of laws prohibiting such discrimination, the IJ found that those materials did not establish that every LGBTI individual in Honduras generally faces an "objectively reasonable possibility of persecution." The IJ further determined that Maldonado-Ruiz was ineligible for withholding of removal, which requires a more stringent showing than asylum, and also denied CAT protection.

Maldonado-Ruiz timely appealed to the BIA. On April 11, 2025, the BIA dismissed her appeal, affirming her ineligibility for withholding of removal and holding that the IJ did not clearly err in finding (1) that the alleged harm did not rise to the level of persecution, (2) that the alleged harm did not occur on account of her membership in her proposed PSGs, and (3) that the Honduran government was not unwilling or unable to protect her. The BIA further held that she waived any challenge to the denial of CAT relief.[6]

Maldonado-Ruiz timely petitioned this court for review.

_____

[6] Maldonado-Ruiz has waived any CAT claim on appeal "by failing to properly address in her brief the merits of her claim or challenge the BIA's waiver determination." Cano v. Bondi, 152 F.4th 237, 247-48 (1st Cir. 2025).

- 7 -

## II.

### A.

"Where, as here, the BIA adopts the IJ's decision but adds its own gloss, we review the decisions of both the BIA and the IJ together."  Martinez v. Bondi, 132 F.4th 74, 78 (1st Cir. 2025) (internal quotation marks omitted) (quoting Figueroa v. Garland, 119 F.4th 160, 166 (1st Cir. 2024)).  We review the entirety of the agency's determination of past persecution or a well-founded fear of future persecution -- both the underlying factual findings and the application of the INA's standard for persecution to those findings -- using the deferential, "substantial evidence" standard.  Urias-Orellana v. Bondi, No. 24-777, 2026 WL 598435, at *4-5 (U.S. Mar. 4, 2026) (quoting Nasrallah v. Barr, 590 U.S. 573, 584 (2020)).  As the Supreme Court has held, substantial evidence "means -- and means only -- such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. at *4 (internal quotation marks omitted) (quoting Biestek v. Berryhill, 587 U.S. 97, 103 (2019)).  The agency's persecution determination is thus "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  Id. (emphasis added) (quoting Nasrallah, 590 U.S. at 584).

To qualify for asylum, Maldonado-Ruiz must show she meets the INA's definition of a "refugee," meaning that she is

"unable or unwilling to return to" her country of nationality because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a [PSG], or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also 8 C.F.R. § 1208.13(a)-(b); Urias-Orellana, 2026 WL 598435, at *2. "Establishing persecution requires proof of three discrete elements: a threshold level of past or anticipated serious harm, a nexus between that harm and government action or inaction, and a causal connection to one of the five statutorily protected grounds." Ramos-Hernandez v. Bondi, 163 F.4th 44, 51 (1st Cir. 2025) (quoting Esteban-Garcia v. Garland, 94 F.4th 186, 191 (1st Cir. 2024)).

"Persecution transcends 'unpleasantness, harassment, and . . . basic suffering,'" and even credible threats must be "so menacing as to cause significant actual suffering or harm." Urias-Orellana v. Garland, 121 F.4th 327, 335 (1st Cir. 2024) (quoting Santos Garcia v. Garland, 67 F.4th 455, 461 (1st Cir. 2023)), aff'd sub nom. Urias-Orellana, 2026 WL 598435 (U.S. Mar. 4, 2026). Where the alleged harm is inflicted by private actors, the applicant must show the government is "unwilling or unable" to control that conduct. Castano v. Bondi, 160 F.4th 226, 232 (1st Cir. 2025) (quoting Khan v. Holder, 727 F.3d 1, 7 (1st Cir. 2013)). And the applicant must provide "sufficient evidence of an actual connection" between the harm and a protected trait; where the

- 9 -

evidence shows multiple motives, a protected ground must be "at least one central reason." De La Cruz-Quispe v. Bondi, 161 F.4th 17, 24 (1st Cir. 2025) (quoting Esteban-Garcia, 94 F.4th at 192).

An inability to establish any one of these three elements defeats the asylum claim. See Ramos-Hernandez, 163 F.4th at 51.

## B.

Substantial evidence supports the BIA's determination that the IJ did not clearly err in finding that Maldonado-Ruiz did not suffer past persecution. During her childhood, her father struck her once with a belt, she witnessed his mistreatment of other family members, and she saw a neighbor fatally shoot her brother-in-law. Years later, as an adult, she witnessed a public shooting, received a single unfulfilled threat from an unknown man, and was subjected to derogatory name-calling by some townspeople. See Escobar v. Holder, 698 F.3d 36, 38 (1st Cir. 2012) (holding "[e]vidence of 'widespread violence . . . affecting all citizens' is not enough to establish persecution on a protected ground" (omission in original) (quoting Maryam v. Gonzales, 421 F.3d 60, 63 (1st Cir. 2005))). The harm in this case is less severe than in other cases in which we found no persecution. See, e.g., Vargas-Salazar v. Garland, 119 F.4th 167, 170-73 (1st Cir. 2024) (multiple death threats and physical assault did not compel

- 10 -

persecution finding); Santos Garcia, 67 F.4th at 459-61 (three threats and a beating by armed assailants insufficient).

Maldonado-Ruiz contends that the agency failed to consider the cumulative effect of her mistreatment in Honduras and overlooked both her mental health diagnoses and the Honduras country conditions evidence. These arguments misstate the record. The IJ expressly considered and weighed the evidence she describes, and the BIA affirmed those findings.[7]

Substantial evidence likewise supports the BIA's determination that the IJ did not clearly err in finding that Maldonado-Ruiz failed to establish the required nexus, including under a mixed motive theory. Her nexus argument focuses on the unknown man's threat, which she contends was centrally motivated by hostility toward her sexual orientation. As the IJ pointed out, no reference was made at all toward her sexuality or her female partner, and her subjective belief is insufficient to establish nexus. See Ruiz-Escobar v. Sessions, 881 F.3d 252, 259-60 (1st Cir. 2018). Evidence that Maldonado-Ruiz's sexual orientation was generally known in the community, or that discrimination against sexual minorities exists in Honduras, does

---

[7] The findings of no past persecution and no nexus are not undermined by Maldonado-Ruiz's PTSD diagnosis. And even assuming, as her brief asserts, she has also been diagnosed with recurrent moderate major depressive disorder relating to her experiences in Honduras, that diagnosis does not alter our analysis.

not compel a contrary conclusion. See, e.g., Espinoza-Ochoa v. Garland, 89 F.4th 222, 237 (1st Cir. 2023) ("[P]ersonal disputes are generally not enough to show the required nexus." (alteration in original) (quoting Barnica-Lopez v. Garland, 59 F.4th 520, 531 (1st Cir. 2023))).

Having failed to show past persecution, Maldonado-Ruiz was required to independently establish a well-founded fear of future persecution that is "both subjectively genuine and objectively reasonable." Esteban-Garcia, 94 F.4th at 191 (quoting Sunarto Ang v. Holder, 723 F.3d 6, 10-11 (1st Cir. 2013)). The IJ assumed a subjectively genuine fear but found it not objectively reasonable. Where, as here, the feared harm would be inflicted by private actors, the applicant must show either government "acquiescence in the persecutor's acts" or an "inability or unwillingness to investigate and punish those acts." Gómez-Medina v. Barr, 975 F.3d 27, 32 (1st Cir. 2020) (quoting Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007)). Substantial evidence supports the agency's determination that Maldonado-Ruiz also failed to make that showing. Her argument to us centers on the police response to (1) her family's complaint after her brother-in-law's killing in the early 1990s, and (2) her 2009 home burglary report. The record reflects that in fact police received those complaints and took reports. Dissatisfaction that the complaints did not result in arrests or convictions does not show government

acquiescence or an inability or unwillingness to investigate or punish the private acts, particularly where "local authorities responded immediately to each incident." Id. (quoting Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005)); see also Alvizures-Gomes v. Lynch, 830 F.3d 49, 55 (1st Cir. 2016). Nor do the two earlier, unsolved incidents -- separated by nearly two decades -- demonstrate that reporting the 2011 threat would have been futile. See Castano, 160 F.4th at 232-34. The agency expressly considered the country conditions reports describing police corruption and evidence of some violence against LGBTI persons, and found the record did not show that conditions for sexual minorities in Honduras had worsened since the period when Maldonado-Ruiz lived openly as a bisexual woman in a same-sex relationship without experiencing anything more than ordinary harassment or mistreatment. See Cortez-Mejia v. Garland, 121 F.4th 938, 943-44 (1st Cir. 2024). The 2011 threat, moreover, was not shown to be motivated by her sexual orientation.[8]

Maldonado-Ruiz does not contest that if she has not proven her case for asylum, her claim of withholding of removal fails as well. See De La Cruz-Quispe, 161 F.4th at 24-25.

---

[8] For largely the same reasons, substantial evidence supports the agency's determination that Maldonado-Ruiz failed to show the Honduran government was unable or unwilling to protect her from past harm inflicted by private actors, independently defeating any claim of past persecution on that ground.

## III.

The petition for review is **<u>denied</u>**.