# United States Court of Appeals
## For the First Circuit

No. 23-2097

LUIS EFRAIN VARGAS-SALAZAR; WILMA JEANETH VARGAS-LASSO; M.V.V.,

Petitioners,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lynch, and Montecalvo,
Circuit Judges.

Kevin P. MacMurray and MacMurray & Associates on brief for petitioner.
Thankful T. Vanderstar, Senior Trial Attorney, Bryan M. Boynton, Principal Deputy Assistant General, and Aimee J. Carmichael, Acting Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, on brief for respondent.

October 17, 2024

**LYNCH**, **Circuit Judge**.  Luis Efrain Vargas-Salazar and his derivative beneficiaries -- his wife Wilma Jeaneth Vargas-Lasso, and their son Maykel Eliab Vargas-Vargas -- natives of Ecuador, petition for review of the Board of Immigration Appeals ("BIA") order affirming the Immigration Judge's ("IJ") denial of their applications for asylum.  Vargas-Salazar also petitions the denial of his application for withholding of removal.  See 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A).

The BIA upheld the IJ's denial of relief, finding, inter alia, that the petitioner failed to satisfy the requirements for asylum and withholding for removal on two grounds: (1) the petitioner had not shown harm rising to the level of past persecution and (2) also had not shown the required nexus between his asserted harm and particular social groups.

Because substantial evidence supports the BIA's finding that the petitioner failed to show harm rising to the level of past persecution and any well-founded fear of future persecution was not on account of a protected ground, that suffices to deny the petition for review.

**I.**

The petitioner, his wife, and son entered the United States without inspection on June 28, 2021, and were served with Notices to Appear on September 27, 2021, charging them with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  They

- 2 -

conceded removability through counsel on March 3, 2022. On March 17, 2022, the petitioner[1] filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), naming his wife and child as derivative beneficiaries. The IJ held a hearing on the application on May 25, 2023. The petitioner, represented by counsel, was the sole witness to testify.

The IJ found the following facts, accepting the petitioner's testimony as credible. Around 2020, the petitioner joined or formed a taxi company with his cousin and about 30 coworkers in Quito, Ecuador. Sometime in 2020, five members of a gang called "the Teachers" (in English) arrived at the company with pistols and ordered Vargas-Salazar's manager to pay three thousand dollars or risk losing "the car or [his] life or something like that." The manager and the company decided to pay the sum and the extortion attempts temporarily stopped.

Some time passed before members of the same gang made a second extortion attempt. This time, the extortion attempt was accompanied by death threats to the petitioner and his family and

---

[1]    We refer to Vargas-Salazar as the "petitioner."

Vargas-Lasso and Vargas-Vargas are not eligible for withholding of removal or protection under the Convention Against Torture because these forms of relief do not carry derivative benefits and they did not file separate applications. See Mariko v. Holder, 632 F.3d 1, 3 n.1 (1st Cir. 2011).

language targeting the petitioner as an indigenous person. The petitioner and his company's workers decided not to pay this extortion demand. Sometime thereafter, the same five gang members who made the first extortion attempt initiated a fight with and made accompanying death threats to the petitioner, his cousin, and his coworkers while out in a public place. The petitioner, his cousin, and other company members fought back, and the petitioner was injured on the top of his head. Police were called and arrested the petitioner's cousin but none of the gang members. The petitioner did not testify that the gang members had pistols during the altercation.

The petitioner went to a community clinic and received stitches on his head. He has a permanent scar at the injury site. The petitioner did not testify that he received medical treatment for his bruises and strikes from the fight. The petitioner and his family made plans to come to the United States immediately after the physical altercation and arrived in the United States shortly thereafter.

In denying relief, the IJ held that "[the] injuries and threats that the [petitioner] suffered individually or combined together . . . [do] not rise to the level of past harm in this case." The IJ explained that "[t]he physical harm that the [petitioner] suffered was treated with a brief visit to the local clinic and did not further require any hospitalization or enduring

- 4 -

debilitation." "The threats that [the petitioner] received from the gang members on himself and his family, while distressing, also [did] not rise to the level of past harm because the threats in this case were not so menacing as to cause significant actual suffering or harm[.]" The IJ also noted the petitioner's testimony that he had not "received any further threats or communications from th[e] gang members" after the second altercation and that "the gang members target other taxi companies because they are seen as having the type of money to be able to pay the extortion." The IJ found that the "serious threat and the injuries to the [petitioner] were the direct result of the unpaid extortion demands that the gang made on the [petitioner's] company the second time."

The IJ separately addressed the petitioner's claim that he had been persecuted on account of being an "indigenous male" and he and his family had been persecuted as being "members of the Vargas nuclear family" and found the petitioner had not established nexus between the enumerated grounds and the harm he had suffered. The IJ found that "there's insufficient evidence on this record to support that the gang's targeting of [the petitioner] and their efforts to extort money from [the petitioner] was on account of his ethnicity or his membership to his family member, nuclear family group, or his race, or any of the other protected grounds as enumerated by the [petitioner] in this case," and so the

petitioner and his family "did not meet their burden of establishing a well-founded fear of future persecution."

The IJ also denied the petitioner's application for withholding of removal, as he had not met its higher bar. The IJ denied his claim for protection under the CAT because he had shown neither that he had ever been, nor that he was likely to, if returned to Ecuador, be "detained or tortured by any governmental official acting under the color of law."

The BIA affirmed.[2] It adopted the IJ's findings of fact and cited to this Court's decisions. The BIA "uph[e]ld the Immigration Judge's conclusion that the [petitioner] has not shown that he suffered harm severe enough to constitute persecution under the INA." It reasoned that, under First Circuit case law, "[u]nfulfilled threats only demonstrate past persecution in extreme cases, where the threat was 'so menacing as to cause significant actual suffering or harm'" (quoting Touch v. Holder, 568 F.3d 32, 40 (1st Cir. 2009)). Here, the petitioner had not shown that the threats caused such harm. In support, the BIA

_____

[2] As for the petitioner's claim for protection under the CAT, the BIA found it waived. We agree with the BIA that the petitioner waived this claim. He could not, and does not, challenge any determination of that claim on appeal because it is unexhausted. See Singh v. Garland, 87 F.4th 52, 58-59 (1st Cir. 2023) ("[W]e consistently have held that arguments not made before the BIA may not make their debut in a petition for judicial review of the BIA's final order." (quoting Gomez-Abrego v. Garland, 26 F.4th 39, 47 (1st Cir. 2022))).

emphasized that "the [petitioner] did not claim . . . that the gang members had weapons during the altercation" nor did he "testify that he required medical treatment other than stitches." The BIA also upheld the IJ's "finding that the [petitioner] did not show that the harm that he suffered and that he fears in Ecuador was or would be on account of a protected basis under the INA."[3] This timely petition for review followed.

## II.

We apply the deferential "substantial evidence standard" to the IJ's factual findings, which "requires us to accept the [IJ's] factual findings . . . unless the record is such as to <u>compel</u> a reasonable factfinder to reach a contrary conclusion." <u>Dorce</u> v. <u>Garland</u>, 50 F.4th 207, 212 (1st Cir. 2022) (omission in

---

[3] The petitioner argues that the BIA erred in applying the incorrect standard in its mixed motive analysis, but we do not address this argument because our decision does not rely on the BIA's mixed motive analysis. To the extent that the petitioner is trying to make the broader argument that the BIA applied the wrong standard in reviewing the IJ's nexus conclusion, we think that is a misreading of the BIA opinion, and, in any event, the petitioner provides no support for its preferred interpretation of the opinion. The BIA decision starts with this correct language and citation: "We review the Immigration Judge's factual findings for clear error, including findings as to the credibility of testimony. We review questions of law, discretion, and judgment and all other issues in appeals from decisions of Immigration Judges de novo. <u>See</u> 8 C.F.R. § 1003.1(d)(3)." The BIA also added a parenthetical "stating that the persecutor's actual motive is a question of fact," citing <u>Matter of N-M-</u>, 25 I. & N. Dec. 526, 532 (BIA 2011), when applying the clear error standard within its nexus discussion. The BIA correctly referred to the clear error standard in reviewing the IJ's findings of fact underlying its nexus determination.

original) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it[.]").  We review the BIA's conclusions of law de novo.  Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

To succeed on an asylum application, a petitioner must "demonstrate a well-founded fear of persecution" and that fear must be "'on one of five protected grounds' -- race, religion, nationality, political opinion or membership in a particular social group." Paiz-Morales v. Lynch, 795 F.3d 238, 243 (1st Cir. 2015) (quoting Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014)); see 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i).  "This burden can be met with 'proof of past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution.'" Paiz-Morales, 795 F.3d at 243 (quoting Singh, 750 F.3d at 86).

Substantial evidence supports the IJ and BIA's finding that the petitioner had not proven past persecution.  A showing of persecution requires more than "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).  Unfulfilled threats rarely prove past persecution unless they are "so menacing as to cause significant actual suffering or harm." Touch, 568 F.3d at 40 (quoting Butt v. Keisler, 506 F.3d 86, 91 (1st Cir. 2007)); see also Santos Garcia v. Garland, 67

F.4th 455, 461 (1st Cir. 2023) (holding that three extortion attempts by armed individuals accompanied by death threats, one of which resulted in injuries to Santos Garcia, were insufficient proof of past persecution). We noted in Santos Garcia that "there [was] no finding that [] threats [against the petitioner] were 'credible' threats of death as opposed to threats intended to frighten him into paying, especially given the lack of severity of the one assault." 67 F.4th at 461. Substantial evidence supports the same result here. Nor did the petitioner show the threats caused "significant actual suffering or harm." Touch, 568 F.3d at 40 (quoting Butt, 506 F.3d at 91).

The petitioner emphasizes that he sustained an injury to his head from the fight with the gang members. This injury required only outpatient medical treatment which does not indicate persecution. See Jinan Chen v. Lynch, 814 F.3d 40, 46 (1st Cir. 2016) (whether the petitioner required hospitalization for his injuries "bears on the 'nature and extent' of his injuries and is certainly 'relevant to the ultimate determination.'") (quoting Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013)).

The petitioner also argues that "the Board's assertion that 'the [Petitioner] did not claim, however that the gang members had weapons during the altercation' was made against the weight of the record." Substantial evidence supports the Board's assertion. The petitioner's testimony was that the gang members were armed

- 9 -

"when the <u>first</u> extortion demand came in" (emphasis added), which was directed at his manager rather than himself. He did not so testify regarding the <u>second</u> altercation, during which he received a head injury requiring stitches.

Because the petitioner failed to show past persecution, he is not entitled to a presumption of well-founded fear of future persecution. See <u>Paiz-Morales</u>, 795 F.3d at 243. To qualify for asylum, any well-founded fear of future persecution must be "<u>on account of</u> race, religion, nationality, membership in a particular social group, or political opinion." <u>Varela-Chavarria</u> v. <u>Garland</u>, 86 F.4th 443, 449 (1st Cir. 2023) (emphasis added)(quoting 8 U.S.C. § 1101(a)(42)(A)). The record does not support such a showing here. The petitioner presented no evidence of future persecution other than his previously discussed evidence of past persecution. He does not point to any events from which a continuing threat could be inferred on account of his membership in his claimed particular social groups or on account of any other protected ground.

"A petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal." <u>Paiz-Morales</u>, 795 F.3d at 245. Here, the petitioner's asylum claim fails, so his withholding of removal claim fails as well.

We **<u>deny</u>** the petition for review.

- 10 -