# United States Court of Appeals
## For the First Circuit

No. 25-1421

ALEJANDRA MILAGROS DE LA CRUZ-QUISPE,

Petitioner,

v.

PAMELA J. BONDI,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

Jonathan K. Ng, Omar Rahman, Abdul Wahab Niaz, Bhuvanyaa Vijay, and The Law Offices of Johanna M. Herrero on brief for petitioner.

Kohsei Ugumori, Senior Litigation Counsel, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Brett A. Shumate, Assistant Attorney General, Civil Division, and Jessica E. Burns, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

December 5, 2025

**LYNCH**, **Circuit Judge**.  Alejandra Milagros De La Cruz-Quispe ("De La Cruz"), a native and citizen of Peru, petitions for review of a decision by the Board of Immigration Appeals ("BIA") dismissing her appeal from the Immigration Judge's ("IJ") denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  See 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. § 1208.16.  We deny the petition because substantial evidence supports the agency's determinations and there were no errors of law.

## I.

## A.

De La Cruz entered the United States without a valid entry document on February 10, 2013, at or near Hidalgo, Texas.  On March 6, 2013, an asylum officer determined that she had established a credible fear of persecution.  The Department of Homeland Security initiated removal proceedings on August 27, 2017, filing a Notice to Appear that charged her with removability pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  On October 17, 2019, De La Cruz, through counsel, admitted the allegations in the Notice to Appear, conceded that she was removable, and filed applications for the relief and protection described earlier.  On February 25, 2020, she testified

- 2 -

at a merits hearing before the IJ and submitted a written declaration in support of her applications.

Where the materials in the record contain minor discrepancies, we recount the facts as the IJ found them. De La Cruz described a long and turbulent relationship with her ex-partner, Mauro. She met him in 2005 or 2006, and they began a relationship in October 2006. Years later, in February 2009, Mauro hit De La Cruz and bit her lip after hearing that she had been with someone else, which marked the first time he was physically violent toward her. The following month, they moved in together.

De La Cruz became pregnant in June 2009, and Mauro did not want the baby. He suggested an abortion and, when she refused, he beat and kicked her. The abuse continued through the summer. In November 2009, after De La Cruz left the house without Mauro's permission, he hit her twice with a sandal and slapped her. He also insulted her and forced her to have sex "a few times," and she testified that she had to submit because she was "his woman." The next month, angry that De La Cruz had gone to see fireworks, Mauro dragged her around the house by her neck.

Their daughter was born in February 2010, and Mauro did not want the child. He beat De La Cruz when the baby would cry, refused to help with money, forced De La Cruz to have sex with him two weeks after the birth, and then kicked her and the baby out of the house. The two stayed with De La Cruz's parents until April

or May 2010, when Mauro saw her and the baby on the street, put them in a cab, brought them to his house, and slapped De La Cruz twice.

De La Cruz left Mauro once in October 2010 and again in March or April 2011, each time staying at her parents' home. After the first separation, she returned to him in December 2010 after he apologized and begged for forgiveness. Money then became a source of conflict. After the second separation, she again reconciled with Mauro in February 2012 following more apologies, and the physical and sexual abuse resumed.

In February or March 2012, De La Cruz reported Mauro to the police but was later told there was no record of her complaint. When she went to file a second report in September 2012, Mauro was waiting for her at the station, and he kicked and punched her once they got away from the building. The beatings and sexual violence escalated. When she again returned to her parents' home, Mauro came with his uncle, a police officer, and threatened to kill her and take their daughter if De La Cruz did not return to him. It is unclear whether she indeed returned to him before she decided to leave Peru and traveled alone to the United States, leaving behind her daughter, whom she says she could not afford to bring.

Mauro's conduct formed the basis for De La Cruz's assertions that she had suffered past persecution and faced a well-founded fear of future persecution on account of her

membership in twelve proposed particular social groups ("PSGs"),[1] as well as a fear of future torture if removed to Peru. She supplemented her applications with country conditions evidence indicating the persistence of violence against women in Peru.

**B.**

On June 19, 2020, the IJ issued a written decision denying De La Cruz's applications and ordering her removed to Peru. The IJ found her credible and her asylum application timely. The IJ denied asylum because De La Cruz had not shown a nexus between the harm she described and a statutorily protected ground, concluding that her membership in her proposed PSGs was not "at least one central reason" that Mauro harmed or would harm her. The IJ found that the harm Mauro inflicted was motivated by "his personal relationship to [De La Cruz]." The IJ also determined she was ineligible for withholding of removal, which requires a

---

[1] De La Cruz proposed the following PSGs: (1) Peruvian women, (2) Peruvian women in a domestic relationship, (3) Peruvian women unable to leave a domestic relationship, (4) Peruvian women in a forced non-consensual relationship, (5) Peruvian women viewed as property and as subordinate to men by virtue of their gender, (6) Peruvian women viewed as property and as subordinate to men by virtue of their position within their family, (7) Peruvian women viewed as property and unable to leave a non-consensual relationship because of their gender and their subordinate position in Peruvian Society, (8) Peruvian feminist women who oppose male domination, control by men, and who refuse to accept gender restrictive gender conforming social mores, (9) Peruvian feminist women who believe in gender equality, (10) Peruvian women without governmental protection, (11) Peruvian women without familial protection, and (12) Family unit.

more stringent showing than asylum.  The IJ denied CAT protection, finding her fear of future torture to be "purely speculative" and that she had not shown it was more likely than not she would be tortured by, or with the acquiescence of, the Peruvian government.

De La Cruz timely appealed to the BIA.  On April 3, 2025, the BIA dismissed her appeal, holding that the IJ did not clearly err in finding that (1) Mauro was motivated to harm her because of "their personal relationship and history" and not on account of her membership in any of her proposed PSGs; (2) she was ineligible for withholding of removal; and (3) her fear of future torture was too speculative to qualify for CAT protection.[2]

De La Cruz timely petitioned this court for review.

---

[2] The BIA also rejected De La Cruz's argument that the IJ erred in failing to consider her claim for humanitarian asylum under 8 C.F.R. § 1208.13(b)(1)(iii), holding she was ineligible for such relief because she had not shown persecution on account of a protected ground.  Her contention that the BIA misstated the legal standard is meritless.  Humanitarian asylum may be granted, in the exercise of discretion, only where an applicant has first established past persecution on account of a protected ground and then shown either "compelling reasons" arising from the severity of that past persecution or a reasonable possibility of "other serious harm" upon removal.  8 C.F.R. § 1208.13(b)(1)(iii)(A)-(B); see also Barrera Arreguin v. Garland, 29 F.4th 1010, 1017 (8th Cir. 2022) ("Humanitarian asylum requires a showing of past persecution; 'failure to prove persecution on a protected ground makes [a noncitizen] ineligible for humanitarian asylum.'" (quoting Kanagu v. Holder, 781 F.3d 912, 919 (8th Cir. 2015))).

- 6 -

"Because the BIA affirmed the IJ's decision after determining that the IJ's findings and conclusions were not erroneous -- rather than expressly adopting the IJ's reasoning -- we focus our review on the BIA's decision." Trejo v. Bondi, 152 F.4th 248, 254 (1st Cir. 2025) (internal quotation marks omitted) (quoting Contreras v. Bondi, 134 F.4th 12, 18 (1st Cir. 2025)).

"Whether an applicant has met his or her burden for proving eligibility is a question of fact." Esteban-Garcia v. Garland, 94 F.4th 186, 191 (1st Cir. 2024) (quoting Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018)). We review the BIA's factual findings using the "substantial evidence standard," a deferential standard that "requires us to accept" those findings "unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion." Id. (quoting Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022)); see also Aldana-Ramos v. Holder, 757 F.3d 9, 14 (1st Cir. 2014), as amended (Aug. 8, 2014) ("We must uphold the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992))). "We review the BIA's

conclusions of law de novo."[3]  Vargas-Salazar v. Garland, 119 F.4th 167, 172 (1st Cir. 2024).

### III.

### A.

To qualify for asylum in the United States, De La Cruz must show that she meets the INA's definition of a "refugee," meaning that she is "unable or unwilling to return to" Peru because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a [PSG], or political opinion."  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); see also 8 C.F.R. § 1208.13(a)-(b); Alves v. Bondi, 128 F.4th 297, 298-99 (1st Cir. 2025).  And "[e]stablishing persecution requires proof of three discrete elements," including "a causal connection [between the harm suffered and] one of the five statutorily protected grounds."  Esteban-Garcia, 94 F.4th at 191 (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021)).  We focus, as did the BIA, on this "nexus requirement."  See

---

[3] In her reply brief, De La Cruz argues that, after the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), we should not defer to the BIA's alleged skepticism toward gender based PSGs.  Because the argument was raised for the first time in reply, it is waived, and further it has no bearing on the issues presented in this case.  See Martinez v. Bondi, 132 F.4th 74, 79 n.3 (1st Cir. 2025) (holding that petitioner waived Loper Bright argument "by first making it in her reply brief"); Fleurimond v. Bondi, 157 F.4th 1, 5 n.1 (1st Cir. 2025) (declining to address "what, if any, deference would be owed to an agency's interpretation of either a statute or a regulation" because "no issue is raised by the parties that implicates the question").

Cano-Gutierrez v. Bondi, 146 F.4th 26, 32 (1st Cir. 2025) ("A no-nexus finding is outcome determinative as to asylum.").

"'To meet th[e] "nexus" requirement,' the petitioner must have provided 'sufficient evidence of an actual connection between the harm [s]he suffered and h[er] protected trait.'" Esteban-Garcia, 94 F.4th at 192 (alterations in original) (quoting Ivanov v. Holder, 736 F.3d 5, 12 (1st Cir. 2013)). "The petitioner need not 'establish[] the exact motivation of [her] "persecutor,"' but she 'does bear the burden of establishing facts on which a reasonable person would fear that the danger arises on account of' a protected ground." Id. (alterations in original) (quoting In re Fuentes, 19 I. & N. Dec. 658, 662 (BIA 1988)); see also Elias-Zacarias, 502 U.S. at 483. "Where the evidence shows there are multiple motives for persecution, the petitioner must provide some evidence to establish that a protected ground was 'at least one central reason.'" Esteban-Garcia, 94 F.4th at 192 (quoting INA § 208(b)(1)(B)(i); 8 U.S.C. § 1158(b)(1)(B)(i)); see also Barnica-Lopez v. Garland, 59 F.4th 520, 528 (1st Cir. 2023) (holding that "the statutorily protected ground need not be the sole factor driving the alleged persecution" but that it "cannot be 'incidental, tangential, superficial, or subordinate to another reason for [the] harm'" (alteration in original) (first quoting Loja-Tene v. Barr, 975 F.3d 58, 61 (1st Cir. 2020); and then quoting Sanchez-Vasquez, 994 F.3d at 47)).

Substantial evidence supports the BIA's determination that the IJ did not clearly err in finding that De La Cruz failed to establish the required nexus, even under a mixed motive theory. The record, largely comprised of De La Cruz's own statements, shows that Mauro's abuse arose from intensely personal disputes within the relationship. The evidence certainly does not compel a finding that "the scope of [any] persecution extends beyond a 'personal vendetta.'" Alves, 128 F.4th at 299 (alteration in original) (quoting Pojoy-De León v. Barr, 984 F.3d 11, 17 (1st Cir. 2020)); see also Espinoza-Ochoa v. Garland, 89 F.4th 222, 237 (1st Cir. 2023) ("'[P]ersonal disputes are generally not enough to show the required nexus' between past harm and a protected ground." (alteration in original) (quoting Barnica-Lopez, 59 F.4th at 531)).[4]

Contrary to De La Cruz's contention, both the IJ and the BIA accurately recited and applied the "one central reason" mixed motive standard. Nothing in their decisions indicates that they "prematurely terminate[d] the analysis upon the finding of another motive." Lopez-Quinteros v. Garland, 123 F.4th 534, 541 (1st Cir. 2024) (alteration in original) (quoting Sompotan v. Mukasey, 533 F.3d 63, 70 (1st Cir. 2008)). Nor did the BIA apply the wrong standards of review: it properly reviewed the IJ's motive findings

_____

[4] Because the nexus determination is dispositive, we need not address De La Cruz's remaining arguments as to asylum.

for clear error and legal issues de novo, as its decision states. See id. at 542; see also Vargas Panchi v. Garland, 125 F.4th 298, 305 n.5 (1st Cir. 2025) ("[T]he BIA applied clear-error review only to the IJ's findings as to motive, a question of fact.").

**B.**

As De La Cruz failed to show that the record compels a finding of the requisite nexus between her alleged persecution and any statutorily protected ground, her claim for withholding of removal necessarily fails as well. "To obtain relief in the form of withholding of removal, an [applicant] must establish a clear probability that, if returned to his homeland, he will be persecuted on account of a statutorily protected ground." Mendoza v. Bondi, 133 F.4th 139, 142 (1st Cir. 2025) (alteration in original) (quoting Espinoza-Ochoa, 89 F.4th at 230); see also Vargas-Salazar v. Garland, 119 F.4th 167, 173 (1st Cir. 2024) (holding that "[a] petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal" (quoting Paiz-Morales v. Lynch, 795 F.3d 238, 245 (1st Cir. 2015))).

**C.**

To obtain CAT protection, De La Cruz had to show by a preponderance of the evidence that, if removed to Peru, "[s]he would be subject to torture by or with the acquiescence of a government official." Cano-Gutierrez, 146 F.4th at 33 (quoting

- 11 -

Morgan v. Garland, 120 F.4th 913, 928 (1st Cir. 2024)). "[U]nlike an applicant for asylum, a CAT claimant need not establish a nexus between the torture anticipated upon removal and a protected ground to succeed." Mayancela v. Bondi, 136 F.4th 1, 18 (1st Cir. 2025).

Substantial evidence supports the BIA's determination that the IJ did not clearly err in finding De La Cruz's fear of future torture speculative and insufficient to establish the likelihood of torture required for CAT protection. As the BIA noted, De La Cruz testified that she does not know Mauro's current whereabouts and did not otherwise substantiate her concerns that he will rape, torture, or kill her upon her return to Peru. See Gutierrez-Alm v. Garland, 62 F.4th 1186, 1201 (9th Cir. 2023) (concluding that where a petitioner's fear of future torture is "entirely speculative and unsupported by the record," substantial evidence supports the denial of CAT relief); Pineda-Teruel v. Garland, 16 F.4th 1216, 1221 (7th Cir. 2021) (holding that "[a] speculative fear of future torture that rests on an unproven chain of hypotheticals does not satisfy the applicant's burden").

De La Cruz contends that the BIA merely "rubber stamp[ed]" an IJ decision she says was riddled with legal errors. Her argument is wrong for many reasons, including her mischaracterization of the BIA's decision.[5]

_____

[5] De La Cruz briefly raises a frivolous due process challenge,

**IV.**

The petition for review is **DENIED.**

---

inaccurately asserting that the agency "misstate[d] controlling law, ignore[d] material evidence, or shortcut[] the fact-finding Congress prescribed."  For the reasons described, this claim fails.